The Bankruptcy Court's Findings of Fact and Conclusions of
Law are hereby approved.

_____
U.S. District Judge

Below are the Bankruptcy Court's Proposed Findings of
Fact and Conclusions of Law which are recommended for
approval.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | U.S. District Court Case No. 3:16-mc-00006-SI |
| **Consolidated Estate of Dougherty, Inc., WDL Properties, LLC, Douglas D. Dougherty**, and **Katherina M. Dougherty**, | Bankruptcy Case No. 13-35860-dwh7 |
| Debtor. | Adversary Proceeding No. 15-3153-dwh |
| **Jeanne E. Huffman**, chapter 7 trustee, | ~~PROPOSED~~ FINDINGS OF FACT AND CONCLUSIONS OF LAW RE MOTION OF DEFENDANT LEANN LITERAL TO VACATE DEFAULT JUDGMENT |
| Plaintiff, | |
| v. | |
| **Barton Land & Livestock, LLC**, dba Baker Group Enterprises, an Oregon limited liability company; **George Barton**, an individual; **Lee Ann Literal**, an individual; **Elk Canyon Enterprises, LLC**, an Oregon limited liability company; **Charles Vernon Walker**, an individual; **Robbins Farm Equipment, Inc.**, an Oregon corporation; and **ASNW, Inc.**, dba Agri-Service Northwest, a Washington corporation, | |
| Defendants. | |

Page 1 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

On the bankruptcy court's recommendation, on December 31, 2015, the district court entered judgment in this bankruptcy adversary proceeding by default against the defendants, including Lee Ann Literal. She has now moved to vacate the default judgment against her [20]. I held an evidentiary hearing on the motion to vacate, at which she testified.

Because Literal has articulated a meritorious defense to the claims in this action—I recommend that the district court GRANT her motion and vacate the default judgment against her.

Below, I describe the parties' contentions and evidence, propose findings of fact and conclusions of law, recommend that the motion be granted, and describe the procedure for the district court's consideration of this document.

## I.    *Contentions and evidence*

### *A.    The complaint*

Jeanne Huffman serves as the trustee of the consolidated bankruptcy estate of Dougherty, Inc., and several other entities. On September 11, 2015, the trustee filed the complaint initiating this action.[1]

The trustee asserts that Literal is the partner and significant other of defendant George Barton, they reside together, Barton has not had a bank account in over 25 years, she holds funds of Barton and Barton Land & Livestock in her personal bank accounts, and, based on those allegations, funds transferred to Barton Land & Livestock addressed in the complaint are

---

[1] Docket item 1. References to "docket items" are to documents filed in the bankruptcy adversary proceeding, except when the reference is specifically to a document filed in the district court's case number 3:16-mc-00006-SI.

held or were used for her benefit.[2] The complaint refers to Barton, Barton Land & Livestock, and Literal collectively as "Barton" or the "Barton Defendants."[3]

The complaint contains ten claims for relief. In the first claim for relief, the trustee seeks to avoid (or set aside) and recover from the Barton Defendants, including Literal, certain unauthorized transfers of property of the consolidated bankruptcy estate, as permitted by 11 U.S.C. §§ 549 and 550.[4] The trustee seeks to recover two assets of at least $97,515 and $23,500 each, for a total of $121,015, as well as other unidentified assets. The transfers of those assets are collectively referred to in the complaint as the "Barton Postpetition Transfers"[5] and herein as the "$121,015."

In the seventh claim, the trustee seeks declaratory judgment that the defendants have no right, title, or interest in the assets alleged to be estate property and that any transfers of those assets are void.[6]

In the eighth claim, the trustee seeks turnover of the assets alleged to be estate property or a money judgment for the value of that property.[7]

In the ninth claim, the trustee seeks a declaration that Literal holds in resulting trust the $121,015 and other proceeds of assets described in the complaint that were transferred to Barton and deposited in bank accounts of or otherwise held in her name,[8] she holds substantially all assets in which Barton has an interest, and she enjoys the benefit of the assets, including the farm where he resides with her, the farming equipment, vehicles, trailers, and other

---

[2] Complaint at 3, ¶ 11.
[3] Complaint at 3, ¶ 12.
[4] Complaint at 28-29, ¶¶ 158-63.
[5] Complaint at 28, ¶ 159.
[6] Complaint at 34-35, ¶ 206.
[7] Complaint at 35, ¶ 208.
[8] Complaint at 35, ¶ 210.

Page 3 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

personal property used by him, and the bank and investment accounts in her name where he deposits his funds, including Social Security checks and other payments described in the complaint.[9] To the extent that the court determines that she is not independently and severally liable to the estate under any of the other claims for relief, the trustee requests that "under the doctrine of resulting trust," any judgment against Barton to recover estate assets "should also be entered against and attach to" her assets.[10]

## B. Service of the complaint and summons; other mailings to Literal

The trustee's lawyer certified that the summons and complaint were mailed separately to both Literal and Barton by first-class U.S. mail (as permitted by Federal Rule of Bankruptcy Procedure 7004(b)), on September 16, 2015,[11] and the mailings were addressed to them at 149 Smith Hollow, Dayton, Washington 99328.

In addition to the summons and complaint, four other documents in this action were mailed by the Bankruptcy Noticing Center (the bankruptcy court's mailing agent) separately to both Literal and Barton at the Smith Hollow address: the bankruptcy court's order that the action would be dismissed unless the trustee lodged a proposed default order and judgment, mailed on October 29, 2015,[12] the trustee's motion to settle the action against another defendant, mailed on November 14, 2015,[13] the order of default against Literal, Barton, and others, mailed on January 1, 2016,[14] and the district court's judgment against them and others, mailed on January 27, 2016.[15]

---

[9] Complaint at 35, ¶ 211.

[10] Complaint at 35-36, ¶ 212.

[11] Docket item 4.

[12] Docket item 7.

[13] Bankruptcy Case No. 13-35860, docket item 456.

[14] Docket item 17.

[15] Docket item 19.

Page 4 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

## C.   *The default motion, order, and judgment*

At a hearing on October 27, 2015, the bankruptcy judge stated that, in order to avoid any question of the bankruptcy court's jurisdiction or constitutional authority to enter a default judgment in this action, the bankruptcy court would transmit to the district court a proposed judgment with the bankruptcy judge's recommendation.

On December 28, 2015, the trustee moved for entry of a default order against several defendants, including Literal.[16] On December 31, 2015, the bankruptcy judge signed and entered a proposed judgment and money award, approving it as to form and recommending it to the district court for entry.[17] On January 25, 2016, District Judge Michael Simon signed the judgment in the form proposed by the bankruptcy judge.[18]

The relief granted by the judgment is set forth in four narrative paragraphs, A through D.[19] Paragraph A requires Literal and others to turn over to the trustee any estate assets in the possession of any of the defendants. Paragraph B awards judgment against all the defendants, jointly and severally, avoiding the "Barton Postpetition Transfers" and recovering \$121,015. (The judgment says that "Barton Postpetition Transfers" is defined in the declaration accompanying the default motion, but in fact that definition appears in the complaint,[20] rather than in the default motion.) Paragraph C declares that

> "(a) Literal holds substantially all assets in which George E. Barton has an
> interest, and (b) notwithstanding her independent liability, under the doctrine of
> resulting trust, any judgment entered against George E. Barton to recover assets of
> the Estate shall be entered against and attach to the assets of Lee Ann Literal."

---

[16] Docket item 13.

[17] Docket item 15.

[18] Docket item 18; U.S. District Court for Oregon Case Number 3:16-mc-00006-SI, docket item 2.

[19] Docket item 15 at 2.

[20] See text accompanying note 5 above.

Page 5 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

Paragraph D dismisses without prejudice the remaining claims of the complaint, including the estate's claims for damages for conversion, conspiracy to defraud, and civil RICO.

### D. Literal's motion to vacate

On December 30, 2016, Literal filed in the bankruptcy court her motion to vacate the default judgment.[21] She seeks to set aside the default judgment based on the following three arguments: the judgment is void under Federal Rule of Civil Procedure (Civil Rule) 60(b)(4),[22] the judgment is based on mistakes of fact or inadequate factual findings, and the judgment should be set aside under the standard established in the Ninth Circuit's 1984 decision in *Falk v. Allen*.[23]

### E. The Literal declaration

Accompanying the motion is Literal's supporting declaration, where she makes the contentions summarized in this part I.E.

> Literal is employed as a hairdresser and was formerly employed training racehorses. She currently owns retired race horses and also boards horses owned by others on her property. She owns the home and land where she resides and adjacent agricultural land.[24]

> Literal has been in a relationship with Barton since approximately 2000. He began living on her property in 2005. He has never had any interest in real property that she owns or in any of her other assets, and he did not contribute to their acquisition.[25]

> In August 2015, Barton had four knee surgeries over seven days, with serious complications related to an infection in his knee. Shortly thereafter, he had a series of strokes. He was in and out of the hospital, and he and she had to travel repeatedly for medical treatment between August and December 2015.[26]

---

[21] Docket item 20.

[22] Fed. R. Bankr. P. 9024 (Civil Rule 60 applies in a bankruptcy case).

[23] 739 F.2d 461 (9th Cir. 1984).

[24] Declaration of Lee Ann Literal in Support of Motion to Vacate Default Judgment, attached to docket item 20 (Literal Declaration) at 2, ¶ 2.

[25] Literal Declaration at 2, ¶ 3.

[26] Literal Declaration at 2, ¶ 4.

In late 2015 and early 2016, Literal assisted Barton with managing the extensive bills associated with his medical care. She did not pay the bills, but she assisted him with organizing and tracking them and working with Medicare and insurance. In that process, she contends that she received advice that she should transfer her agricultural land and homestead property to make it unavailable to her future medical creditors. And in reliance on that advice, she conveyed the property to a young woman with whom she is very close, reserving a life estate for herself. She contends that she did not then know of the judgment.[27]

Literal did not receive the summons and complaint. Her unsecured mailbox is on Smith Hollow Road, a rural road. She contends that she has had mail stolen in the past, and her repeated absence from the property in the time after the complaint was mailed to her may explain why she never received it.[28]

If Literal had received the complaint, she would have retained an attorney to defend her; she had nothing to do with the conduct alleged by the trustee; she did not participate in, or assist with, any transfer of property of the debtors or the trustee; and she did not receive or benefit from the $121,015 that the trustee alleges that Barton received from the debtors.[29]

Barton has no interest in any of the assets that Liberal owns, including her real property, and their finances are not commingled. She has periodically allowed Barton to deposit his Social Security checks into her bank account when he did not have a bank account. She then wrote checks out of her account to pay his expenses. Other than his use of her bank account as a means of depositing his Social Security checks and paying his expenses, they have not had any commingled or intertwined finances. Other than his deposit of this Social Security checks from 2015 forward, she has not held any assets, money, or property belonging to him.[30]

Literal learned of the judgment in September or October 2016 when she obtained a title report related to property that she owns with her sisters. She began trying to find an attorney then, but was unsuccessful. When she was served with a judgment-debtor-examination order, she was finally able to retain an attorney, Patrick McBurney. He represented her at the examination and then referred her to her current lawyer to seek relief from the judgment.[31]

---

[27] Literal Declaration at 2, ¶ 5.

[28] Literal Declaration at 3, ¶ 6.

[29] Literal Declaration at 3, ¶ 7.

[30] Literal Declaration at 3, ¶ 8.

[31] Literal Declaration at 3, ¶ 9.

Page 7 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

### F. *The Leonard declaration*

In opposition to the motion to vacate, one of the trustee's lawyers, Justin Leonard,

filed a declaration, making the following contentions.

> On February 29, 2016, Holly Hayman, another of the trustee's lawyers, mailed to
> both Literal and Barton at the Smith Hollow address an affidavit and summary of
> judgment by Leonard in support of the trustee's filing in Columbia County,
> Washington, Superior Court.[32]
>
> On March 8, 2016, Literal signed and acknowledged a deed conveying title to her
> residence real property to Kellie Glorfield in consideration of "love and
> affection."[33] The deed was recorded on May 24, 2016.[34]
>
> On June 16, 2016, lawyer Robert McMillen filed an answer on behalf of Literal,
> Barton, and others to a complaint filed in Polk County, Oregon, Circuit Court by
> AgCo Finance, LLC.[35] Between June and August 2016, Leonard had several
> conversations with McMillen regarding this bankruptcy adversary proceeding and
> the judgment.[36] On August 5, 2016, Leonard wrote to McMillen regarding the
> trustee's intent to enforce the judgment.[37]

### G. *Evidentiary hearing*

On January 23, 2017, this action was assigned to me on the retirement of the prior

bankruptcy judge. On January 26, 2017, I entered an order scheduling an evidentiary hearing on

the motion.[38] Among other things, that order required the parties to exchange exhibits before the

evidentiary hearing, required any objections to authenticity of documents be made at the

beginning of the hearing to dispense with authenticating witnesses, and ordered that, absent a

timely authenticity objection, all exhibits would be deemed admitted. No authenticity objections

---

[32] Declaration of Justin D. Leonard in Support of Objection to Motion to Vacate Default
Judgment, Docket item 24 (Leonard Declaration) at 2, ¶ 9, Ex. D.

[33] Leonard Declaration at 3, ¶ 10, Ex. E.

[34] Leonard Declaration at 2, ¶¶ 8-9, Ex. C-D.

[35] Leonard Declaration at 2, ¶ 7, Ex. B.

[36] Leonard Declaration at 2, ¶ 3.

[37] Leonard Declaration at 2, ¶ 6, Ex. A.

[38] Docket item 29.

Page 8 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

were raised, and I admitted into evidence without objection each exhibit listed in the parties' exhibit lists.[39]

An audio recording of the evidentiary hearing is available on the bankruptcy court's docket of this action.[40] Literal was the sole live witness.

## 1. Commingling of Barton's funds and other property with Literal's

Literal testified that "at one point in time [Barton] gave me some money that he owed me." Barton ordered groceries, some horse and pet food, and parts for her vehicles, and she doesn't know how he paid for those items. He did have access to her bank account and often made deposits (including of his Social Security payments) and withdrawals. She denied receiving any of the $121,015 that Barton allegedly received, and none of her real or personal property had been bought using funds that she received from him.

## 2. Service of summons and complaint by mailing to Literal

Literal denied having received any of the seven mailings to the Smith Hollow address in connection with this action: the summons and complaint, which the trustee's lawyers mailed to Barton and her on September 16, 2015, the four other documents in this action that BNC mailed to Barton and her from October 29, 2015, through January 27, 2016, and the two Superior Court documents that Ms. Hayman mailed to Literal on February 29, 2016.

## 3. Literal's time away from home in the fall of 2015

During the fall of 2015, Literal was regularly away from her and Barton's home in Dayton, Washington, not only working at her job in Dayton and caring for her horses after work, but also attending to several serious medical issues faced by Barton that fall. Barton injured his knee in August, requiring four surgeries, after which he suffered a serious infection

---

[39] Docket items 33 (Literal), 36 (trustee).

[40] Docket item 38.

Page 9 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

and a stroke, he was diagnosed with a hole in his heart, and he underwent physical and speech therapy and heart-repair surgery. His medical treatment occurred primarily away from Dayton, including at Walla Walla and Spokane, Washington, and she was regularly traveling and staying with him while he was away from home. He was release to home care in early September. But her job and horse-care responsibilities kept her away from home until 9:30 p.m., so she was unable to provide Barton's home care, and he moved in with his 95-year-old mother. In addition to her other responsibilities, Literal regularly traveled to Barton's mother's home to and help with his care.

## 4. When Literal first learned of complaint

Literal recalled meeting with McMillen and Barton once, in August 2016, to discuss the AgCo litigation. She thought that McMillen was representing only Barton, and not also her.

Literal claimed to have first learned of the judgment in September 2016, when she received title report for her property in Columbia County, Washington, showing the lien of the judgment as a foreign judgment dated February 29, 2016, and entered on March 8, 2016. Hearing Exhibit A is a copy of the title report. It is dated September 8, 2016, and it bears several hand-written notations on the page describing the lien of the judgment. Those notations include Leonard's name and telephone number.

Literal said that she first saw the complaint when she received a copy from Patrick McBurney, a lawyer whom she hired to advise her about the judgment. She said that it arrived in a yellow envelope and was "big" (the complaint itself is in fact 84 pages long); she didn't recall having previously received by mail a document of that size. She later discussed the complaint with Barton, who by then had had several strokes, and he told her that she "shouldn't be involved in it" and that he didn't recall receiving as much as $120,000.

Page 10 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

### 5.    Other mailings to Literal's home

Literal denied receiving by mail any of the mailings in or related to this action,
other than when mailed to her by her lawyers.

In 2016, Literal learned of mailings to her from the county tax assessor and an
insurance company, which she claims not to have received.

## II.    *Proposed finding of fact*

I do not find credible Literal's assertion that she did not receive the summons and
complaint. Although I perceived no reason to doubt her sincerity, her story is simply not
plausible.

### *A.    Literal was served with and received the summons and complaint.*

In addition to Literal's denial that she received the summons and complaint,
which the trustee's lawyers mailed to the Smith Hollow address on September 16, 2015, she also
denies receiving any of four other documents that BNC mailed to both Barton and her at the
same address from October 29, 2015, through January 27, 2016, and either of the two documents
that Ms. Hayman mailed to Literal on February 29, 2016. It is a settled feature of federal
common law that the proper mailing of a document creates a presumption of receipt.[41] Literal's
denial of receipt of any of the five mailings to her undercuts the credibility of her denial of
receipt of the summons and complaint.

Literal concedes transferring a valuable piece of real property to a friend for "love
and affection" on May 24, 2016. She said that she made this transfer out of fear that she would
lose the property to future medical creditors. It is unlikely that she would take so drastic a step to

---

[41] *Schikore v. BankAmerica Supplemental Retirement Plan,* 269 F.3d 956, 961 (9th Cir. 2001).

Page 11 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

protect property against purely hypothetical future claims. Far more plausible is that she transferred the property in an attempt to escape the trustee's judgment lien.

I do not find credible Literal's testimony that she was entirely unaware of this action until late 2016, nearly a year after entry of the judgment. The trustee's lawyer corresponded with a lawyer representing Literal and Barton in state-court litigation related to this action. The trustee's lawyer's letter, written in August 2016, discussed the judgment in this action and the trustee's efforts to execute on it. In Literal's testimony, she downplayed her involvement in the state-court litigation, stating that Barton had hired their lawyer and that Literal knew nothing of the state-court action or the letter from the trustee's lawyer. During pendency of the state-court litigation, Literal was living in the same house as Barton and was represented by the same lawyer. It is highly unlikely that the lawyer kept his clients in the dark about the litigation. I do not find credible Literal's denial that she learned of the judgment before she saw a title report in September or October 2016.

Accordingly, I propose that the district court find that (1) the trustee's lawyer mailed the summons and complaint to Literal on September 16, 2015; and (2) Literal received that mailing.

## III.    *Proposed conclusions of law*

Based on the findings of fact, I propose that the district court adopt the following conclusions of law.

### A.    *The bankruptcy court has jurisdiction to propose these findings and conclusions, and the district court has jurisdiction to grant or deny the motion to vacate.*

A federal court must determine its jurisdiction on its own motion.[42]

---

[42] *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir. 1985).

Case 15-03153-dwh    Doc 39    Filed 10/02/17

The district court has original subject-matter jurisdiction over a proceeding arising under the Bankruptcy Code (title 11 of the United States Code) or arising in or related to a bankruptcy case (one arising under the Bankruptcy Code).[43] Because this civil action arises in an Oregon bankruptcy case, the Oregon district court has original subject-matter jurisdiction over this action.

The district court may refer bankruptcy cases and proceedings to the bankruptcy judges for the district.[44] The Oregon district court has, by local rule, made that reference to the Oregon bankruptcy judges.[45] Thus, the bankruptcy court has original subject-matter jurisdiction over this action.

In a referred bankruptcy proceeding, whether the final order or judgment is entered by a bankruptcy judge or a district judge turns on whether the proceeding is, by statute, a "core" proceeding and, if it is, whether the resolution of the proceeding by a bankruptcy judge is consistent with Article III of the Constitution. In a core proceeding, a bankruptcy judge has statutory jurisdiction to hear and determine and enter appropriate orders and judgments, subject to appeal.[46] Congress has defined core proceedings to include, without limitation, 16 categories of matters.[47] But, despite statutory jurisdiction, a bankruptcy court lacks authority under Article III to enter a final order or judgments in certain types of core proceedings[48] unless the parties knowingly and voluntarily consent.[49]

---

[43] 28 U.S.C. § 1334(b).

[44] 28 U.S.C. § 157(a).

[45] LR 2100-1(a).

[46] 28 U.S.C. § 157(b)(1).

[47] 28 U.S.C. § 157(b)(2).

[48] *E.g., Stern v. Marshall*, 564 U.S. 462 (2011).

[49] *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

Page 13 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

If a bankruptcy proceeding is not a core proceeding but is related to the bankruptcy case, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment must be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and reviewing de novo those matters to which any party has timely and specifically objected.[50] But with the consent of all parties to the proceeding, the bankruptcy judge may hear and determine a noncore proceeding and enter appropriate orders and judgments, subject to appeal.[51]

The trustee seeks in in this action to recovery estate property allegedly improperly transferred to Literal, through Barton, after the petition date. The trustee invoked in the complaint[52] and the judgment[53] provisions of the Bankruptcy Code that require a person in possession of estate property to deliver the property to the trustee[54] and that permit the trustee to avoid any unauthorized postpetition transfer of estate property[55] and to recover that property or its value.[56] The trustee also alleged in the complaint that this action is a core proceeding, listing (without limitation) five of the statutory types of core proceedings.[57] In the default order,[58] the prior bankruptcy judge referred to this action as a core proceeding, listing two of the five types of core proceedings that the trustee listed in the complaint.[59]

---

[50] 28 U.S.C. § 157(c)(1).
[51] 28 U.S.C. § 157(c)(2).
[52] Complaint at 2, ¶ 3.
[53] Docket item 18 at 2, ¶ B.
[54] 11 U.S.C. § 542(a).
[55] 11 U.S.C. § 549(a).
[56] 11 U.S.C. § 550.
[57] Complaint at 2, ¶ 3.
[58] Docket item 14 at 1.
[59] 28 U.S.C. § 157(b)(2)(F) and (H).

Page 14 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

A sixth statutory type of core proceeding, not listed in but nonetheless applicable to the complaint, is a proceeding seeking an order to turn over property of the estate.[60] Thus, with respect to Literal, this action is a statutory core proceeding. As such, the prior bankruptcy judge had jurisdiction to enter the judgment.

Literal has not addressed subject-matter jurisdiction in her motion to vacate the judgment or otherwise. In the trustee's objection to Literal's motion to vacate the judgment, the trustee stated that "[t]here is a question whether this Court has jurisdiction to vacate the Judgment."[61] At the hearing, I acknowledged that the bankruptcy court lacked authority to modify a district court judgment and that I would propose findings and conclusions for consideration by the district court. Neither party objected to that approach or otherwise addressed subject-matter jurisdiction.

Had the district court withdrawn the reference at any time, such as upon entry of the judgment, the bankruptcy court would now have no jurisdiction over this action—not even to consider the motion and make proposed findings and conclusions. But under 28 U.S.C. § 157(d), an action that has been referred to the bankruptcy court remains referred unless and until the district court withdraws the reference for cause shown. The district court has not withdrawn the reference of this action from the bankruptcy court. The statutory requirement that cause be shown for withdrawal of the reference suggests that withdrawal must be express, and not implied by conduct. Thus, the district court's entry of the judgment, by itself, does not constitute withdrawal of the reference, and this action remains referred to the bankruptcy court, which thus

---

[60] 28 U.S.C. § 157(b)(2)(E).
[61] Docket item 23 at 3, n. 1.

Page 15 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

has jurisdiction to consider the motion. And because the judgment was entered by the district court, only the district court may grant or deny the motion.

### B. The facts described above are properly considered in ruling on the motion to vacate.

In addition to testimony given and exhibits admitted in evidence at the hearing on the motion, my proposed findings of fact are based in part on the parties' declarations regarding the motion. In ruling on a motion, a district or bankruptcy court may rely on matters established by affidavit or declaration.[62]

### C. The judgment is not void.

Literal argues that she did not receive the summons and complaint, and thus the judgment is void because the district court lacked personal jurisdiction over her.

Based on my proposed finding of fact that the summons and complaint were properly served on and received by Literal, I propose that the district court conclude that the judgment is not void.

### D. The judgment is not based upon a mistake of fact.

Literal argues that the judgment was based on a mistake of fact and should be set aside under Civil Rule 60(b)(1). Specifically, she argues that the district court did not make sufficient factual findings to support its judgment, at least with respect to the imposition of damages against her.

Rule 60(b)(1) permits relief from a default judgment where a mistake, inadvertence, surprise, or excusable neglect was the reason for the default. Literal's argument is

---

[62] Fed. R. Civ. P. 43(c); Fed. R. Bankr. P. 9017 (Civil Rule 43(c) applicable in bankruptcy cases); 28 U.S.C. § 1746 (declaration satisfies requirement for affidavit).

Page 16 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

altogether different: she claims that the judgment itself contains mistakes. A mistake in a judgment would be a proper subject for an appeal, but not for a motion to vacate the judgment.[63]

I propose that the district court conclude that the judgment was not based on mistake. I address "excusable neglect" below.

### E. *The* Falk *factors favor vacating the judgment.*

At the hearing, the trustee's lawyer argued that the motion should be denied because Barton received the $121,015, Literal's bank accounts are being used by Barton to shield his funds as though they accounts are Barton's property, Literal is Barton's alter ego, and Literal and Barton were using her bank accounts to hold the $121,015 and their household funds. The trustee's lawyer couldn't identify any evidence that the $121,015 ended up in Literal's account.

Rule 60(b)(6) permits a court to vacate a default judgment for "any other reason that justifies relief." In *Falk*, The Ninth Circuit established a three-part test for evaluating a motion to vacate a default judgment under this provision. The court must consider: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default."[64] These factors also apply to a motion to vacate for "excusable neglect" under Rule 60(b)(1).[65] The Ninth Circuit admonished that Rule 60(b) is "remedial in nature and . . . must be liberally applied"[66] and that default judgments are "appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."[67]

---

[63] *See Twentieth Century-Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1341-42 (9th Cir. 1981) (Civil Rule 60(b) does not provide relief for error on the part of the court and is not a substitute for appeal) (quoting *Title v. U.S.,* 263 F.2d 28, 31 (9th Cir. 1959)).

[64] *Falk v. Allen,* 739 F.2d at 463.

[65] *TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 696-97 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141 (2001).

[66] *Falk v. Allen,* 739 F.2d at 463.

[67] *Id.*

Page 17 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

If any one of the *Falk* factors militates against vacating the judgment, the court may, but need not, deny the motion to vacate.[68] The Ninth Circuit has held that, because the law favors decisions on the merits whenever possible, judgment by default is "the exception, not the norm, and should be viewed with great suspicion."[69] Based on these factors, taken together, I recommend below that the district court vacate the judgment.

### 1. *Granting the motion to vacate will not prejudice the trustee.*

For purposes of a Rule 60(b) motion, a plaintiff's ordinary expense or delay inherent in litigating its claims on the merits does not constitute prejudice to the plaintiff.[70] In 2001, the Ninth Circuit held in *TCI Group Life Ins. Plan v. Knoebber* that "[a] default judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her claim because of her opponent's failure to respond; vacating the default judgment merely restores the parties to an even footing in the litigation."[71]

Here, the trustee argues that she and her lawyer have invested substantial time and effort in trying to realize on the default judgment. Those collection efforts would have been necessary after a judgment on the merits as well. There is no reason to suppose, and the trustee has not argued, that the passage of time since the filing of the complaint will make it any more difficult for the trustee to prove her case. The situation here is more closely analogous to that in *Knoebber*,[72] in which the Ninth Circuit held that the costs of litigating against a motion to vacate did not qualify as prejudice. "Prejudice" in this context means something other than the ordinary costs of litigation.

---

[68] *Brandt v. American Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1112 (9th Cir. 2011); *U.S. v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015).

[69] *Aguilar*, 782 F.3d at 1106.

[70] *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009).

[71] 244 F.3d at 701.

[72] 244 F.3d at 701.

Page 18 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

Thus, I propose that the district court conclude that the inconvenience that the trustee may experience does not constitute "prejudice" under the applicable standard.

## 2. *Literal has articulated a meritorious defense.*

Literal has denied that she received the $121,015. Because the trustee's primary theory of recovery against Literal is that Literal is or was in possession of estate property, Literal's denial of receipt of the $121,015 is a meritorious factual defense. Of course, at trial the finder of fact would be under no obligation to believe Literal. But her categorical denial of the central factual allegation of the trustee's claims against her weighs in favor of allowing her to have her day in court.

Because Literal admitted on cross-examination that her and Barton's assets are commingled, the trustee argued that the doctrines of "resulting trust" or "constructive trust" make Literal's assets liable for the judgment against Barton. I disagree.

As the Ninth Circuit Bankruptcy Appellate Panel has observed, "[a]lthough oftentimes the terms constructive trust and resulting trust are used together or interchangeably, the two concepts are distinct."[73] A resulting trust exists where "circumstances show[] that the transferee was never intended to take beneficial interest through the transaction."[74] Although the trustee may be able to prove that Barton transferred certain specific assets to Literal without intending her to take a beneficial interest in those particular assets, it would not follow that all her assets are held in trust for Barton. Thus, to the extent that the resulting trust doctrine has any application here, it too is subject to her proffered defense.

---

[73] *Airwork Corp. v. Markair Express, Inc. (In re Markair, Inc.)*, 172 B.R. 638, 641 (9th Cir. B.A.P. 1994).
[74] *Id.* at 641-42.

Page 19 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

A constructive trust, by contrast, "is an equitable remedy which arises when the person holding title to property has an equitable duty to convey it to another on the grounds that they would be unjustly enriched if permitted to retain it."[75] The parties appear to agree that Washington law governs the resulting or constructive trust claim. Unlike a resulting trust, a constructive trust does not depend upon the parties' intent; instead, it exists as a court-ordered remedy to prevent the unjust enrichment of the recipient.[76] The trustee may argue that Literal will be unjustly enriched if allowed to retain assets belonging to the estate. For the trustee to prevail in a constructive-trust claim, she need not show that Literal was complicit in the transfer.[77] But the trustee must show that Literal holds title to particular assets rightfully belonging to the estate—which Literal denies. As noted above, at the hearing, the trustee relied on receipt by Barton, not Literal, of the $121,015, and Barton's use of Literal's bank accounts to shield his funds, and the trustee was unable to identify any evidence that the $121,015 ended up in Literal's account.

This document is not the proper occasion to address definitively on the merits of the trustee's claims or Literal's defenses. If the district court vacates the judgment, the parties will have the opportunity to try the merits of the claims and defenses. For now, it suffices to observe that she has made allegations that, if proved, would establish a meritorious defense.[78] And I propose that the district court so conclude.

---

[75] *City of Lakewood v. Pierce County*, 144 Wash. 2d 118, 126 (2001).

[76] *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wash. App. 80, 87 (2001).

[77] *Brooke v. Robinson*, 125 Wash. App. 253, 257 (2004) ("The question is whether the enrichment is unjust, not whether the holder of the property acted with bad motive").

[78] *See U.S. v. Aguilar*, 782 F.3d at 1107.

Page 20 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17

### 3. *Literal was culpable.*

In 1988, the Ninth Circuit held in *Alan Neumann Prods., Inc. v. Albright*[79] that a defendant's conduct is culpable if the defendant has received actual or constructive notice of the filing of the action and intentionally failed to answer.

Literal argues that her failure to participate in this action before judgment was inadvertent and excusable. Based on my proposed findings of fact above, I propose that the district court conclude that, because Literal received actual or constructive notice of the pendency of this action and intentionally failed to answer, she is culpable.

### IV. *Recommendation*

The district court has discretion to deny the motion to vacate if it agrees with my finding that Literal's behavior was culpable.[80] But denial of the motion is not mandatory, and the district court retains the discretion to grant the motion—even if it finds that one of the *Falk* factors weighs against her.[81] Because she has raised serious concerns about the legal and factual basis underlying the judgment against her, I recommend that the district court exercise its discretion to GRANT the motion to vacate.

### V. *Procedure*

Under LR 1200-1(c)(1), the trustee has 14 days after service of this document to file in the district court and serve specific written objections to these proposed findings and conclusions, and Literal may respond to the trustee's objections within 14 days after service of any objections. If the trustee timely objects, the district judge will make a de novo review of the proposed findings and conclusions and may do so on the record or take additional evidence. The

---

[79] *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988).

[80] *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1112 (9th Cir. 2011).

[81] *Id.* ("A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not").

district judge may accept, reject, or modify the proposed findings and conclusions or recommit the matter to the bankruptcy judge with instructions.

Page 22 – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE etc.

Case 15-03153-dwh    Doc 39    Filed 10/02/17